IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:23-cv-00581

| | |
|---|---|
| JAMES AYERS, DOYLE CAWTHON, JR., DEUAL STARR, and DARRON GRAY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) |
| *Defendant.* | ) ) ) |

**PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT**

COME NOW, Plaintiffs James Ayers, Doyle Cawthon, Jr., Deual Starr, and Darron Gray on behalf of themselves and all others similarly situated,[1] by and through undersigned counsel, and hereby set forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against GKN Driveline North America, Inc., ("GKN" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for unpaid overtime compensation, unpaid wages, and related penalties and damages.

---
[1] Plaintiffs represent individuals employed at Defendant GKN's Alamance County facility.

2.     Plaintiffs consist of current and former employees working at Defendant GKN's manufacturing facility in Alamance County, North Carolina. Defendant has a policy, pattern, or practice of failing to pay employees for all scheduled and overtime hours worked (even though such hours were properly recorded), and failing to pay employees all earned, promised, and accrued wages. In particular, throughout the relevant period, Defendant has maintained a corporate policy and practice of rounding or shaving Plaintiffs' hours worked to scheduled shift times and failing to compensate employees for all hours worked, including mandatory pre-shift and post-shift work, as well as required work performed during scheduled meal breaks, and failing to compensate employees at the promised rate for hours worked less than 40 per week and/or overtime rate for all hours worked in excess of forty (40) per week in violation of both the FLSA and the NCWHA.

3.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant GKN's Alamance County, North Carolina facility on the manufacturing floor in non-managerial positions who were not compensated for all of their statutory overtime hours worked above forty (40) per week any time within three years prior to the commencement of this action, through the present.

4.     Defendant's pay practices and policies are in direct violation of the FLSA's statutory required overtime; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek statutory overtime wages and the appropriate overtime premiums for all overtime work required, suffered, or permitted by Defendant, liquidated damages

and/or other damages, attorneys' fees, costs, and expenses incurred in this action, pursuant to 29 U.S.C. § 216(b).

5.    Plaintiffs also bring this action, on their own behalf, and as representatives of similarly situated current, former, or future manufacturing employees, employed by Defendant at GKN's manufacturing facility in Alamance County, North Carolina, under the NCWHA. Plaintiffs, who are North Carolina residents and who worked for Defendant in Alamance County, North Carolina, assert that they and the putative class, who work or worked in Alamance County, North Carolina for Defendant, are entitled to compensation for all work performed for Defendant before, during, and/or after their scheduled shift. Additionally, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular and overtime rate for all hours worked in excess of forty (40) per week, for an equal amount of liquidated damages, prejudgment interest, [2] and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d)

6.    Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> Individuals who were, are, or will be employed at Defendant GKN's Alamance County, North Carolina facility on the manufacturing floor in non-managerial positions, subjected to either a rounding and/or time shaving policy of their actual hours worked, and/or were subjected to an automatic 30-minute meal break deduction policy, and who have or may have worked through or during unpaid meal breaks without compensation at least once, at any time within two years prior to the commencement of the *Mebane* action, through the present.

---

[2] Pursuant to § 95-25.22(a), prejudgment interest is available under the NCWHA, but not under the FLSA.

7.     Defendants' practice of failing to compensate Plaintiffs at the appropriate promised straight time and overtime rates and failure to compensate Plaintiffs for all compensable work violates Plaintiffs' rights under the NCWHA for failing to fulfill its promised wages as laid out in writing via a handbook, earning statement, or job announcement/description, and consistent with any promised premium and/or overtime written policy for hourly employees.  The FLSA's Savings Clause pursuant to § 218(a) of the FLSA provides that employers should comply with the more stringent between the FLSA and state wage and hour laws.  Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does *not* preempt the NCWHA.

## PARTIES

8.     Plaintiff Ayers is an adult citizen and resident of Ruffin, North Carolina.

9.     Plaintiff Cawthon, Jr. is an adult citizen and resident of Julian, North Carolina.

10.     Plaintiff Starr is an adult citizen and resident of Snow Camp, North Carolina.

11.     Plaintiff Gray is an adult citizen and resident of Greensboro, North Carolina.

12.     Defendant GKN is organized under Delaware law and has its principal place of business at 2220 North Opdyke Road, Auburn Hills, MI 48326.

13.     During the relevant time period, Defendant operated three regional facilities, including GKN Driveline – Alamance County (located in Mebane), GKN Driveline – Roxboro, and GKN Driveline – Sanford.

14. Plaintiff Ayers worked for Defendant GKN in its Alamance County, North Carolina, location as a non-exempt, hourly paid Maintenance Technician from approximately May 11, 2014 until around December 2017.

15. Plaintiff Cawthon, Jr. worked for Defendant GKN in its Alamance County, North Carolina, location as a non-exempt, hourly paid Maintenance Technician from approximately June 20, 2010 until around April 20, 2019.

16. Plaintiff Starr began working for Defendant GKN in its Alamance County, North Carolina, location as a non-exempt, hourly paid Machine Operator in the Heat Treat Department from approximately 2016 until November 2021, and thereafter from August 2022 to the present.

17. Plaintiff Gray worked for Defendant GKN in its Alamance County, North Carolina location as a non-exempt, hourly paid Machine Operator in the Spider Department from approximately May 2016 until March 2022.

18. The FLSA collective action putative Plaintiffs consist of individuals who worked for Defendant at its Alamance County location, who were non-exempt employees paid an hourly wage, and who were not properly paid their statutory overtime given Defendant's policy and practice of rounding down or shaving the number of hours employees worked and properly recorded pursuant to Defendant's strict policy that all employees accurately record all hours worked, including any time spent in any pre and/or post-shift activities.

19. Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 216(b), as representatives of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

20.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

21.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business in Alamance County, North Carolina, which is located within this District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducted business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

23.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

24.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA.

25.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

26.     Upon information and belief, during the time period relevant to this action, Defendant was an employer that employed Named and Putative Plaintiffs, pursuant to the FLSA and the NCWHA,  in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## COVERAGE

27.     At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named and Putative Plaintiffs.

28.     At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

29.     At all times material to this action, Named and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

30.     At all times material to this action, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

31.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.     Defendant GKN Driveline North America, Inc. designs, manufactures, and services systems and components for leading aircraft, vehicle, and machinery

manufacturers. Defendant GKN has a focus in developing, building, and supplying an extensive range of automotive driveline products and systems, for luxury cars to low-cost cars.

**Plaintiff Ayers' Employment Duties, Shift, and Pay Rate:**

33. Plaintiff James Ayers began work for GKN at its Alamance County location in or about early 2014 as a maintenance technician.

34. Plaintiff Ayers' duties involved repairing GKN's production floor machinery all over the production floor at the Alamance County facility. Additionally, he ensured the building maintained all utilities such as water, electrical, compressed air systems, and more, as well as electrical and pipe work as needed.

35. Plaintiff Ayers worked the third shift, which was scheduled from approximately 10:30 p.m. to 7:00 a.m., with two (2) paid ten (10) minute breaks, and one (1) thirty (30) minute lunch break. Plaintiff Ayers' final pay rate was approximately $26.00 per hour.

**Plaintiff Cawthon's Duties, Shift, and Pay Rate:**

36. Plaintiff Cawthon's duties included ensuring the building maintained all utilities such as water, electrical, compressed air systems, and more, as well as electrical and pipe work as needed.

37. Plaintiff Cawthon worked the first shift for the first year, which was scheduled from approximately 7:00 a.m. to 3:30 p.m. Thereafter, Plaintiff Cawthon worked the third shift, which was scheduled from 11:00 p.m. to 7:30 a.m. Plaintiff Cawthon's final

8

pay rate was approximately $25.00 per hour.

**Plaintiff Deual Starr's Duties, Shift, and Pay Rate:**

38.     Plaintiff Starr worked as a machine operator in the Heat Treat department on the production floor. Plaintiff Starr's primary duties included loading and unloading racks into the furnace and running thousands of parts through the furnace each day.

39.     Plaintiff Starr primarily worked the third shift, which was scheduled from approximately 11:00 p.m. until 7:30 a.m. Plaintiff Starr's current pay rate is approximately $23.70 per hour, in addition to a premium for working the third shift.

**Plaintiff Darron Gray's Duties, Shift, and Pay Rate:**

40.     Plaintiff Gray worked in the Spider Department on the production floor, and his primary duties included running hundreds of thousands of parts through machines and operating the forklift. Occasionally, when other areas were short-staffed Plaintiff Gray worked in other departments including the Heat Treat department.

41.     Plaintiff Gray worked the third shift, which was scheduled from approximately 11:00 p.m. until 7:30 a.m., with a final pay rate of about $17.00 per hour, in addition to a premium for working the third shift.

## WAGE-RELATED FACTUAL ALLEGATIONS

42.     Upon information and belief, Defendant GKN has more than 10,000 employees at approximately 50 locations around the United States.  Six of these locations are in North Carolina, of which five specialize in driveline manufacturing.

43.     Defendant GKN employs machinists, line inspectors, and similar positions

9

on its manufacturing floors to produce its products.

44.     Defendant GKN compensates machinists, line inspectors, and other manufacturing floor employees on an hourly basis. Defendant GKN classifies these employees as hourly non-exempt under the FLSA.

45.     Plaintiffs Ayers and Cawthon, Jr. worked for Defendant GKN as maintenance technicians during the relevant period.

46.     Plaintiffs Starr and Gray worked for Defendant GKN as machine operators during the relevant period. Plaintiff Starr continues to work for GKN as a machine operator.

47.     Defendant requires employees working on the manufacturing floor to work scheduled shifts, typically eight and one-half (8.5) hour shifts, five (5) days per week, with what should be a thirty (30) minute lunch break each day.  Some employees are required to work up to twelve (12) hour shifts and up to seven (7) days a week, contingent upon Defendant's production demands.  Defendant often requires employees to work mandatory overtime during seasons of heavy demand, such that employees may work their scheduled shift six (6) to seven (7) days per week during busy months.

48.     During the relevant period, to satisfactorily perform their job duties and meet work production demands, manufacturing floor employees were required to perform work-related duties beyond their scheduled shift times, including before their shift start time, during their scheduled meal breaks, and after the end of their shift end time.

**Plaintiffs' Pre-Shift Activities**

49.     Specifically, manufacturing floor employees were required to arrive prior to

10

the start of their scheduled shift, and once clocked in, were ordered to go to their work area immediately to perform essential job duties.

50.    For example, Plaintiffs Ayers and Cawthon, Jr. were required to arrive prior to the start of their shift to prepare their work areas and machines, check emails, check machines, coordinate with the previous shift, and when needed, troubleshoot machines.

51.    Plaintiffs Starr and Gray, as machine operators, were also required to arrive prior to the start of their shift to check the machines/furnaces, meet with the previous shift, and to read reports from previous shifts.

52.    Unnervingly, Plaintiff Gray was advised that if he came to work early, before the start of his shift, he would be able to leave early. However, Defendant GKN never lived up to such promises.

53.    This required pre-shift work was required by Defendant, as Defendant called upon Plaintiffs to go to their work area immediately to begin working, after they clocked in but before their shifts began.

**Plaintiffs' Lunch Breaks**

54.    Because Plaintiffs often worked alone and to meet production demands, including ensuring machines remained operating at all times, Plaintiffs often worked during their scheduled meal breaks or ate while they operated machinery. More specifically, as maintenance technicians, Plaintiffs Ayers and Cawthon, Jr. maintain they were unable to take a lunch break approximately three (3) times per week either because they were working alone and unable to leave their workstation, or because phones and

11

watches were not allowed on the manufacturing floor and Plaintiffs were not notified to begin their lunch. As machine operators, Plaintiffs Star and Gray maintain they were unable to take a lunch break approximately twice per week.

55.    Similarly, as machine operators, Plaintiffs Starr and Gray maintain they were unable to take a lunch break approximately twice per week, whenever they were short-staffed and working alone due to the nature of the work and requirement that they were not allowed to turn off their machines during their shift.

56.    Approximately two (2) to three (3) times per week when Plaintiffs were able to take a meal break, they were typically unable to take the full thirty (30) minutes and instead took, on average, a ten (10) to fifteen (15) minute break, because Defendant regularly called Plaintiffs to come back to work while on their lunch break to fix machines and to complete work. Plaintiffs Starr and Gray were frequently less likely to take a full, uninterrupted lunch break later in the week due to impending deadlines.

**<u>Post-Shift Activities</u>**

57.    At the end of the end shift, Plaintiffs Ayers and Cawthon, Jr., as maintenance technicians were required to stay between thirty (30) minutes and one (1) hour past their scheduled shift time to put parts away, coordinate with the following shift, clean their work areas, fill parts for production, among other required tasks.

58.    Plaintiffs Starr and Gray were also required to stay approximately thirty (30) minutes past their scheduled shift time as machine operators, as they were required to complete activities including, but not limited to, finishing up work and cleaning and

12

maintaining their work areas, and communicating with the following shift, as machine operators were required to do.

59.    As a result of these activities, employees stayed past their scheduled shift end time, engaged in required post-shift activities—pursuant to Defendant's policy and practice of requiring employees to complete maintenance on machines among other activities, communicate with the following shift, clean their workstations and more—and then clocked out, consistent with Defendant's policy and practice that all employees were required to properly record all hours worked.  Nevertheless, Defendant did not pay Plaintiffs for such time.

60.    Specifically, pursuant to Defendant's Kronos Rounding Policy, Defendant rounded down or shaved Plaintiffs' hours worked to Plaintiffs' scheduled shift times and rounded any lunch break up to thirty (30) minutes, automatically deducting 30 minutes from employees' total daily hours worked, irrespective of whether employees took a lunch break or not, which resulted in an organizational practice of underpaying its employees.

61.    Defendant's parent company GKN's unlawful compensation practices, (including deducting a rounded thirty (30) minutes from employees' shifts), were also the subject of a class action, filed on December 16, 2016, in the case of *Ismael Diaz v. GKN Aerospace CHEM-TRONICS Inc.*, No. 37-2016-00044445-CU-OE-CTL (Cal. Super. 2016).  In that action, the parties reached a settlement, which was ultimately approved by the court.

62.    Despite the *Diaz* litigation, Defendant continued to carry out unlawful pay practices, as alleged herein.

63.     Defendant's failure to compensate for all properly recorded hours worked, including all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, and to pay employees all promised, earned, and accrued wages, has affected all putative Plaintiffs similarly.

## FLSA COLLECTIVE ACTION ALLEGATIONS

64.     Named Plaintiffs bring the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated employees.

65.     Members of the FLSA class are similarly situated.

66.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

67.     There are numerous (in excess of 1000) similarly situated current and former manufacturing floor employees that fall within the scope of the aforementioned FLSA class.

68.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

69.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

70.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

14

71.     Named Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiffs' signed consent forms are filed with the Court as Exhibits A, B, C, and D to this Complaint. However, Named Plaintiffs in this action were also Opt-in Plaintiffs in the *Mebane v. GKN Driveline North America, Inc.,* No:. 1:18-CV-892-LCB-LPA (February 22, 2021), Dkts. 95-1, 95-2, 95-5.

72.      As this case proceeds, it is likely other individuals who previously filed consent forms in the *Mebane* matter will re-file consent forms and join as opt-in plaintiffs to continue pursuing their claims in this matter.

73.     Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

74.     Plaintiffs brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

75.     <u>Numerosity</u>:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises more than 1000 individuals.

76.     <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and

these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

    a.   Whether pre-shift work, working "lunch breaks," and post-shift work performed by putative Class Members is compensable under the NCWHA;

    b.   Whether Defendant's failure to compensate putative Class Members for all hours worked due to Defendant's Kronos rounding system is in violation of the NCWHA;

    c.   Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked less than and in excess of forty (40) each week pursuant to § 95-25.6; and

    d.   Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

77.   <u>Typicality</u>: The claims of Plaintiffs are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all pre-shift and post-shift work, and working lunch breaks,

16

for hours worked in excess of forty (40) each week at the appropriate hourly rate, and for all hours worked at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

78. <u>Adequacy of Representation</u>: Plaintiffs are able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

79. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual

litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

80. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

81. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**<u>COUNT ONE</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees**

82. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

18

83. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

84. At all relevant times, Defendant has employed and continues to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

85. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

86. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

87. At all relevant times, Defendant, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs, including for required pre-shift and post-shift work performed by Plaintiffs.

88. Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2)

19

year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

89.     As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

90.     Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees**

91.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

92.     The class period for this cause of action is at least two years from the date of the filing of the instant Complaint.[3]

93.     At all relevant times, Defendant has employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

94.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

95.     Employers must satisfy the notice requirements of N.C. Gen. Stat. § 95-25.13

---

[3] *See* Dkt. 8 (Plaintiffs' Motion for Equitable Tolling).

by ensuring an up-to-date handbook, or other written policies and practices of promised wages are provided to employees in a readily accessible manner.

96.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statements of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other forms whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

97.     Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

98.     Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

99.     Moreover, 13 N.C. Admin. Code 12 § .0307(c) provides that any *ambiguous policies* and practices with respect to bonuses, commissions, and other forms of wage *calculation* "shall be construed against the employer and in favor of employees."

21

100. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendants were required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

101. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

102. Additionally, Defendants were required to provide employees with advanced notice for wage deductions permissible by and in compliance with the NCWHA.

103. Defendants intentionally refused to pay all wages that accrued on their designated pay days, including wages for *all hours worked*, including pre- and post-shift work, and working lunch breaks, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

104. Defendants are not permitted by state or federal law to withhold or divert any portion of Plaintiffs' and class members' wages that are at issue in this Complaint.

105. Defendants were aware that Plaintiffs and putative plaintiffs were not receiving all promised straight-time wages for all hours worked up to forty (40) and promised premium wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding promised premium rates.

106. The alleged foregoing conduct constitutes willful violations of the NCWHA, N.C. Gen. Stat. §95-25.1, *et seq*.

107. Defendant employed Named and Putative Plaintiffs within the State of North Carolina.

108. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, including, for example, required post-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

109. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages that had accrued on Plaintiffs' designated payday violates N.C. Gen. Stat. §§ 95-25.6, 95-25.13.

110. As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

111. Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, given that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

112. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat.

§§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiffs as representatives of all those similarly situated under the FLSA collective action;

2.     Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiffs as representatives on behalf of all those similarly situated under the NCWHA class;

3.     Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.     Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.     Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.     Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this July 14, 2023.

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com

*Attorneys for Plaintiffs*