IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES AYERS, DOYLE CAWTHON, JR., DEUAL STARR, and DARRON GRAY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | CA No.: 1:23-cv-00581-LCB-LPA |
| v. | ) ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| *Defendant.* | ) | |
| JOHN CARSON and RANDALL STARK, on behalf of themselves and all others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | CA No.: 1:23-cv-00583-LCB-LPA |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| *Defendant.* | ) | |
| TAMEKA FERGES and DARRICK PAYLOR, on behalf of themselves and all others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | CA No.: 1:23-cv-00585-LCB-LPA |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) ) | |
| *Defendant.* | ) ) | |

i

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR EQUITABLE TOLLING ON BEHALF OF THE PUTATIVE CLASS**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................ 2

III. LEGAL ARGUMENT ............................................................................ 7

    A. Standard of Review ...................................................................... 7

    B. The Circumstances in *China Agritech* Are Distinguishable from the Facts of the Present Case. ................................................................. 8

        1. The PSLRA Allows Early Resolution of Class Claims Not Available to Plaintiffs in Mebane. .................................................. 10

        2. This Matter's Hybrid Complex Class Claims Prolongs Final Disposition of Class Certification Issues. ......................................... 12

        3. Unlike the Plaintiff in China Agritech, Plaintiffs Here Continuously Litigated Their Class Claims from Decertification in Mebane through the Present Action. ................... 13

    C. The Supreme Court's Policy Rationale for Its Decision in *China Agritech* Would Be Undermined, Not Supported, By Applying Its Holding to the Present Case. ....................................................... 15

    D. Plaintiffs' Proposed Collective and Class Are Not Impermissible Fail-Safe Classes. ............................................................................. 17

IV. CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*American Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ....................................................................................... passim

*Bigelow v. Syneos Health, LLC*,
   No. 5:20-CV-28-D, 2020 WL 5078770 (E.D.N.C. Aug. 27, 2020) ............................... 19

*Chado v. National Auto Inspections, LLC*,
   No. CV 17-2945, 2019 WL 1981042 (D. Md. May 3, 2019) ........................................ 18

*China Agritech v. Resh*,
   584 U.S. 732 (2018) ....................................................................................... passim

*Crown, Cork & Seal Co., Inc. v. Parker*,
   462 U.S. 345 (1983) ................................................................................. 7, 12, 16

*Daniel v. Stericycle, Inc.*,
   No. 320CV00655RJCDCK, 2022 WL 987341 (W.D.N.C. Mar. 31, 2022) ................... 12

*Dean v. China Agritech, Inc.*,
   857 F.3d 994 (C.A.9 2017) ..................................................................................... 9, 14

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ...................................................................................... 18

*Hamelin v. Faxton-St. Luke's Healthcare*,
   274 F.R.D. 385 (N.D.N.Y. 2011) ............................................................................... 18

*Mebane, et al. v. GKN Driveline North America, Inc.*,
   CA No: 1:18-CV-892 ..................................................................................... passim

*Messner v. Northshore Univ. HealthSys.*,
   669 F.3d 802 (7th Cir. 2012) ...................................................................................... 18

*Rindfleisch v. Gentiva Health Servs., Inc.*,
   22 F.Supp.3d 1295 (N.D. Ga. 2014) ........................................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................................... 19

*Williams v. G4S Secure Sols. (USA) Inc.*,
   2018 WL 565718 (M.D.N.C. Jan. 24, 2018) ............................................................... 12

**Statutes**

15 U.S.C. § 78 ............................................................................................... 10, 11

28 U.S.C. § 1658 ................................................................................................... 8

**Other Authorities**

Private Securities Litigation Reform Act of 1995 ....................................... passim

Securities Exchange Act ........................................................................................ 8

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ passim

L.R. 7.3 ........................................................................................................... 2, 6

# I.    <u>INTRODUCTION</u>

Plaintiffs, James Ayers, Doyle Cawthon, Jr., Deual Starr, and Darron Gray; John Carson and Randall Stark; Tameka Ferges and Darrick Paylor ("Plaintiffs"), previously filed a Motion for Equitable Tolling (*Ayers* Dkt. 8, *Carson* Dkt. 5, *Ferges* Dkt. 6) contemporaneously with the filing of their Initial Complaint (Dkt. 1) for Defendant GKN Driveline North America, Inc.'s ("Defendant") violations of the Fair Labor Standards Act ("FLSA") and North Carolina Wage and Hour Act ("NCWHA"). Once briefing was complete, the Court granted equitable tolling for Plaintiffs' individual claims under the FLSA and NCWHA but denied tolling *without* prejudice as to Plaintiffs' putative class allegations. *Ayers* Dkt. 45, *Carson* Dkt. 40, *Ferges* Dkt. 46. However, the Court subsequently granted Plaintiffs' proposed discovery as to their putative class claims, explaining that while the Supreme Court's decision in *China Agritech v. Resh*, 584 U.S. 732 (2018) presented a significant legal obstacle for Plaintiffs in obtaining tolling for their class allegations, the Court would *not* conclusively deny tolling until both Parties had an opportunity to litigate the issue. *Ayers* Dkt. 54-1, *Carson* Dkt. 49-1, *Ferges* Dkt. 53-1, April 11, 2024, Text Order Post-Hearing Regarding Discovery Disputes; *Ayers* Dkt. 54-2, *Carson* Dkt. 49-2, *Ferges* Dkt. 53-2, April 10, 2024, Hearing Transcript.

Predictably, *one-week* later Defendant moved to strike Plaintiffs' class and collective allegations, raising the *China Agritech*'s holding regarding the tolling of successive class claims. *Ayers* Dkt. 51, *Carson* Dkt. 45, *Ferges* Dkt. 50.

On August 19, 2024, Plaintiffs moved for conditional (*Ayers* Dkt. 70, *Carson* Dkt. 65, *Ferges* Dkt. 69) and class (*Ayers* Dkt. 72, *Carson* Dkt. 67, *Ferges* Dkt. 71) certification.

1

Under this Court's local rules, Defendant's deadline to respond to Plaintiffs' conditional/class certifications motions was September 9, 2024. *See* L.R. 7.3(f). However, Defendant failed to respond in opposition and instead filed an emergency motion to stay on Plaintiffs' collective/class certification motions pending a ruling on Defendant's Motion to Strike. *Ayers* Dkt. 74, *Carson* Dkt. 69, *Ferges* Dkt. 73. As explained in greater detail in Plaintiffs' Memorandum in Support of Their Motion to Grant Motions for Certification as Uncontested (*Ayers* Dkt. 82, *Carson* Dkt. 77 *Ferges* Dkt. 81), Defendant's failure to respond in opposition to Plaintiffs' collective/class certification motions means such motions should ordinarily be granted. *See* L.R. 7.3(k) ("If no response brief is filed within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."); *see also Ayers* Dkt. 82, *Carson* Dkt. 77, *Ferges* Dkt. 81 § III(D). Defendant's Motion to Strike (*Ayers* Dkt. 51, *Carson* Dkt. 45, *Ferges* Dkt. 50) has now been rendered moot by knowingly failing to file a response in opposition to Plaintiffs' motions for collective/class certification, entitling Plaintiffs to the granting of their motions as a matter of right. *See Ayers* Dkt. 82, *Carson* Dkt. 77, *Ferges* Dkt. 81 § III(D).

As such, Plaintiffs hereby bring the present Motion for Equitable Tolling on Behalf of the Putative Class.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In the *Mebane* matter, Named Plaintiffs James Mebane and Angela Worsham ("Mebane Plaintiffs"), filed their original complaint on October 23, 2018, pleading causes

2

of action for both a collective claim under the Fair Labor Standards Act ("FLSA") for unpaid overtime and class claims under Fed. R. Civ. P. 23 ("Rule 23") for Defendant's failure to compensate employees for all hours worked, including hours over forty (40) per week, at the promised hourly rates consistent with Defendant's corporate policies and/or earning statements in violation of N.C. Gen. Stat. § 95-25.6. *Mebane, et al. v. GKN Driveline North America, Inc.*, CA No: 1:18-CV-892, ECF No. 1.

On October 29, 2019, the *Mebane* Plaintiffs filed a motion for conditional certification for their claims under the FLSA and North Carolina Wage and Hour Act ("NCWHA"). *Mebane*, ECF No. 64. On November 5, 2020, this Court conditionally certified the FLSA collective action and certified the NCWHA "Rounding Class" pursuant to Rule 23 of the Federal Rules of Civil Procedure. *Mebane*, ECF No. 82. Named Plaintiffs in the present action then filed consent to sue forms on February 22, 2021, joining *Mebane* as Opt-in Plaintiffs. *Mebane*, ECF Nos. 95-1 (Plaintiffs Ayers' and Cawthorn, Jr.'s Consents); 95-2 (Plaintiff Gray's Consent); 95-5 (Plaintiff Starr's Consent).

On March 15, 2022, the *Mebane* Plaintiffs filed a Fourth Amended Complaint, which included an additional class claim for employees who worked during their scheduled meal breaks despite Defendant's "Automatic Deduction Policy." *Mebane*, ECF No. 146. This Court also certified the additional class on August 2, 2022. *Mebane*, ECF No. 154. In response to the Court's certification of an additional class, Defendant filed a Motion for Reconsideration on August 16, 2022. *Mebane*, ECF No. 156. On November 16, 2022, this Court granted Defendant's Motion in part and denied in part, requesting Plaintiffs Mebane and Worsham submit a proposed definition of the additional class. *Mebane*, ECF No. 179.

3

On November 21, 2022, Plaintiffs promptly submitted a proposed definition of the additional class. *Mebane*, ECF No. 183, Plaintiffs' Supplemental Briefing Regarding the Automatic Deduction Class Definition.

After nearly three years of maintaining a certified class, gaining a secondary sub-class, and just two months shy of trial, on May 12, 2023, the Court decertified the *Mebane* Plaintiffs' FLSA collective action and the Rule 23 class upon Defendant's motion. *Mebane*, ECF No. 198. Wasting no time, the *Mebane* Plaintiffs filed a petition for permission to appeal the decertification ruling to the Fourth Circuit, *Mebane*, ECF No. 201, and moved to stay the litigation, *Mebane*, ECF No. 202. Unfortunately, the Fourth Circuit denied Plaintiffs' petition for permission to appeal on June 28, 2023. *Mebane*, ECF No. 205.

Just over *two* (2) *weeks* after the Fourth Circuit's decision, on July 14, 2023, former *Mebane* Opt-in Plaintiffs Ayers, Doyle, Cawthon, Jr., Starr, and Gray Carson and Stark Ferges and Paylor pursued their claims on behalf of themselves and on behalf of other former opt-in Plaintiffs, putative Plaintiffs and Rule 23 class members currently or formerly employed at Defendant's manufacturing facility in Alamance County, North Carolina (Dkt. 1, Plaintiffs' Collective and Class Action Complaint) ("Complaint"), while simultaneously moving for equitable tolling (*Ayers* Dkt. 8, *Carson* Dkt. 5, *Ferges* Dkt. 6, Plaintiffs' Motion for Equitable Tolling).[1] This Court granted tolling in part for Named Plaintiffs' individual FLSA and NCWHA claims from the original filing of the *Mebane*

---

[1] Rather than file a motion to dismiss, Defendant filed its Answer. Also, during the course of the Parties' 26(f) Planning Meeting, Defendant never objected to allowing Plaintiffs pursue discovery on behalf of the putative Plaintiff/Rule 23 class. *See Ayers* Dkt. 37, *Carson* Dkt. 33, *Ferges* Dkt. 40 (the Parties' Joint Amended Discovery Plan).

action and relevant *Mebane* Opt-in Notices through the filing of the present action on July 14, 2023, and denied in part *without* prejudice claims for the putative class members. *Ayers* Dkt. 45, *Carson* Dkt. 40, *Ferges* Dkt. 46, Equitable Tolling Order.

During a subsequent hearing regarding numerous discovery disputes between the Parties, the Court addressed Defendant's position that the denial *without* prejudice of equitable tolling for putative Plaintiffs and Rule 23 class members consequently precluded Plaintiffs from obtaining discovery necessary for pursuing collective/class claims. *See Ayers* Dkt. 54-2, *Carson* Dkt. 49-2, *Ferges* Dkt. 53-2, at 21:05-25:25. The Court clarified as follows:

> [Defendant] didn't raise the *China Agritech* in [its] opposition to the equitable tolling. So the plaintiffs never had a chance to address *China Agritech* tolling […]. My research showed that it was a problem, so I wasn't going to give it to [Plaintiffs] because of that; but on the other hand, I wasn't going to deny it to them, permanently[,] either, that is with prejudice, because [Plaintiffs] hadn't really had a chance to be heard on that. […]

*Id*. at 23:18-24:24.

Following the Court's explanation of its rationale, Defendant acknowledged that the Court had "already ruled on the objections regarding *China Agritech*" but repeated its position that "the current state of play is that there is no tolling as to putative class and collective members." *Id*. at 25:03-14. The Court responded that Defendant "didn't file a motion to dismiss, motion for judgment on the pleadings as to the collective or class aspects." *Id*. at 25:15-23.

One (1) week after the hearing, Defendant filed a Motion to Strike Plaintiffs' Collective and Class Allegations. *Ayers* Dkt. 51, *Carson* Dkt. 45, *Ferges* Dkt. 50. The

Parties fully briefed their respective positions regarding *China Agritech* and its relevance to the tolling of the Parties' collective and class claims. *Compare Ayers* Dkt. 52, *Carson* Dkt. 47, *Ferges* Dkt. 51, Defendant's Memorandum in Support of Motion to Strike, *with Ayers* Dkt. 54, *Carson* Dkt. 49, *Ferges* Dkt. 53, Plaintiffs' Response in Opposition to Defendant's Motion to Strike, *and Ayers* Dkt. 55, *Carson* Dkt. 50, *Ferges* Dkt. 54, Defendant's Reply in Support of Motion to Strike. The Court did not rule on Defendant's Motion to Strike before Plaintiffs' August 29, 2024, deadline for filing their Motions for Conditional Class Certification (*Ayers* Dkt. 70, *Carson* Dkt. 65, *Ferges* Dkt. 69) and for Rule 23 Class Certification (*Ayers* Dkt. 72, *Carson* Dkt. 67, *Ferges* Dkt. 71). *After* Plaintiffs filed their motions for conditional and class certification, Defendant sought a stay (*Ayers* Dkt. 74, *Carson* Dkt. 69, *Ferges* Dkt. 73) *and* an extension of deadlines (*Ayers* Dkt. 76, *Carson* Dkt. 71, *Ferges* Dkt. 76) in the hopes the Court *might* grant its Motion to Strike. Defendant failed to file any response to Plaintiffs' motions for conditional and Rule 23 class certification, entitling Plaintiffs to the ordinary granting of their motions as uncontested pursuant to Local Rule 7.3(k). *See Ayers* Dkt. 81, *Carson* Dkt. 76, *Ferges* Dkt. 80, Plaintiffs' Motion to Grant Conditional and Class Certification Motions as Uncontested.

Now, Plaintiffs move again for equitable tolling of putative class claims to the extent Defendant's failure to respond facilitates the granting of Plaintiffs' motions for conditional and class certification as uncontested, thereby mooting Defendant's earlier Motion to Strike. *See Ayers* Dkt. 82, *Carson* Dkt. 77, *Ferges* Dkt. 81.

## III.  LEGAL ARGUMENT

### A.  Standard of Review

"[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983).

The Supreme Court found in *American Pipe* that once class-action status has been denied, members of the failed class may timely intervene as individual plaintiffs in the pending action. 414 U.S. at 552-53. The Supreme Court further clarified the *American Pipe* tolling rule in *Crown, Cork & Seal Co.*, finding that putative class members may elect instead to file their own individual lawsuits rather than intervene. 462 U.S. at 350, 353-54.

In *China Agritech*, the Supreme Court was faced with the question of whether *American Pipe* tolling extends to successive securities class action claims pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), finding that it does not. *See generally* 584 U.S.

Here, the Court initially denied *without* prejudice Plaintiffs' motion for equitable tolling of Plaintiffs' claims on behalf of the putative class, explaining that the *China Agritech* ruling *might* preclude Plaintiffs from pursuing successive class claims after the decertification order in the *Mebane* matter. Dkt. 45, at **7-8. However, the facts, procedural history, and law at issue in *China Agritech* are distinguishable from those of the

7

present case. *See generally* 584 U.S. As such, the Supreme Court' s findings in *China Agritech* do not appropriately apply here. Moreover, if the Court denies with finality equitable tolling for pre-2020 collective and class claims, the Supreme Court's express rationale in *China Agritech* for efficiency and economy of litigation would be undermined by incentivizing defendants in FLSA collectives to delay while obligating FLSA plaintiffs to file hundreds or thousands of individual complaints immediately upon decertification.

**B.** **The Circumstances in *China Agritech* Are Distinguishable from the Facts of the Present Case.**

The case before the Supreme Court when deciding *China Agritech* was the <u>*third*</u> successive class action against the *same* defendant for the *same* alleged violations of the Securities Exchange Act ("SEA"). 584 U.S. at 736. The SEA contains a two-year statute of limitations that begins to run as soon as facts constituting a violation are discovered. 28 U.S.C. § 1658(b). The alleged violations at issue in all *three* cases against the defendant, *China Agritech*, were initially discovered on February 3, 2011. *China Agritech*, 584 U.S. at 736. Just over a week later, on February 11, 2011, the first action was filed by Theodore Dean on behalf of a putative Rule 23 class pursuant to the PSLRA. *Id*.

As such, consistent with PSLRA requirements, Dean published pre-certification notice in a widely circulated national business-oriented publication notifying all putative class members of the pending action and inviting motions for lead-plaintiff status. *Id*. at 736-37. On May 3, 2012, a little over a year after the first action began and upon the close of discovery, the district court denied class certification. *Id*. at 737. Dean published another notice advising putative class members that because class certification had been denied,

they must either intervene or file their own individual actions. *Id*. Dean's case was subsequently settled in September 2012. *See Dean v. China Agritech, Inc.*, 857 F.3d 994, 998 (C.A.9 2017).

On October 4, 2012, Dean's former counsel timely filed a *second* action with identical allegations against the same defendant for a new purported lead-plaintiff, Smyth, on behalf of the Rule 23 putative class. *China Agritech*, 584 U.S. at 737. Again, Dean's former counsel, now representing Kevin Smyth, published pre-certification notice for putative class members, and, again, the district court denied class certification. *Id*. Smyth's case was also subsequently settled. *Id*.

On June 30, 2014, an entirely new plaintiff named Michael Resh filed a *third* action on behalf of a Rule 23 putative class. *Id*. at 738. Resh had not sought lead-plaintiff status in either of the preceding two actions nor involved himself directly in any way. *Id*. Furthermore, Resh was not represented by the same counsel as had represented Dean and Smyth. *Id*. Finally, Resh's action was filed a year-and-a-half *after* the two-year statute of limitations would have expired absent tolling *and* nearly a year after the *second* action was denied class certification and resolved out of court. *Id*. The district court thus dismissed the class complaint as untimely. *Id*. The Ninth Circuit reversed, and the Supreme Court granted certiorari. *Id*.

In its ruling, the Supreme Court found that *American Pipe* tolling for successive individual actions did *not* extend to otherwise time-barred successive class actions brought by a new plaintiff relying on the diligence of another plaintiff in filing a timely complaint.

*Id.* at 739-44. The Supreme Court justified its holding through the need for efficiency and economy of litigation. *Id.* 739-40.

However, the circumstances before the Supreme Court in *China Agritech* are *wholly* distinguishable from the circumstances before *this* Court in the *present* case. First, the plaintiffs' class claims in the *China Agritech* matters involved the unique provisions of the PSLRA, which enable early resolution of class certification issues. Second, and by contrast, Plaintiffs' collective and class claims in the present case are derived in part from hybrid wage and hour claims pursuant to both the NCWHA *and* the FLSA, which requires an unavoidably lengthy two-stage certification process. Third, while the plaintiff Resh was completely uninvolved in the first two actions against the defendant China Agritech and brought his own class claims nearly two years after the expiration of the statute of limitations period, he also did *not* comply with the procedural requirements. Here, by contrast, Plaintiffs were all directly involved in the preceding, still-ongoing *Mebane* matter and wasted no time in pursuing their class claims continuously from decertification to the filing of the initial complaint here.

1.  *The PSLRA Allows Early Resolution of Class Claims Not Available to Plaintiffs in Mebane.*

The PSLRA contains unique pre-certification and lead-plaintiff provisions that completely differentiate its class certification process from the class certification process at issue here. *See* 15 U.S.C. § 78u-4.

First, the PSLRA requires pre-certification notice to be published "in a widely circulated national business-oriented publication" advising all members of the purported

10

class of the pendency of the action within twenty (20) days of filing the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the PSLRA requires contenders for lead-plaintiff status to move to serve as lead-plaintiff of the class within sixty (60) days of the pre-certification notice's publishing. *See id*. Third, the court must appoint the "most adequate plaintiff" to represent the interests of the putative class within ninety (90) days of pre-certification notice, enabling litigants to make the best possible case for class certification within approximately three (3) months of filing the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Without this filtering, the named plaintiff representing a putative class is merely whomever filed the action first, increasing the risk for denial of certification or decertification. The PSLRA's pre-certification and lead-plaintiff provisions not only allow plaintiffs to provide notice immediately to putative class members and establish the strongest class representative possible but also ensure resolution of the class certification issue on an expedited timeframe.

Neither the *Mebane* matter nor the present action involves the PSLRA. Here, the *Mebane* plaintiffs were not permitted under Rule 23 or the FLSA to publish pre-certification notice at the outset of litigation to maximize the time available for putative class members to involve themselves directly or even become aware that an action was filed. In other words, there is "no mechanism for absent putative class members to learn that a putative class action is pending, much less that they are entitled to seek to displace the named plaintiff in that lawsuit as a class representative." *China Agritech*, 584 U.S. at 750 (Justice Sotomayor concurring). Furthermore, the *Mebane* Plaintiffs had no

11

opportunity to benefit from the expedited schedule of class certification supported by the provisions of the PSLRA.

2. _This Matter's Hybrid Complex Class Claims Prolongs Final Disposition of Class Certification Issues._

Moreover, the time scale for hybrid complex class actions involving both traditional Rule 23 (NCWHA) class claims and typical FLSA collective claims is naturally longer than Rule 23 class actions pursuant to the PSLRA, because the parties typically engage in both pre-certification and merits discovery (bifurcated discovery), and most hybrid collective/class actions are unlikely to reach final disposition on class certification (due to potential decertification motion and dispositive motion briefing) until the appropriate statute of limitations, absent _American Pipe_ and/or equitable tolling, has already expired. _See, e.g., American Pipe_, 414 U.S.; _see also Crown, Cork, & Seal Co._, 462 U.S..

When plaintiffs have putative class claims for wage and hour violations under both the FLSA and state law, efficiency and economy of litigation support the joining of FLSA collective certification and Rule 23 class certification in _one_ motion. _See e.g._, _Daniel v. Stericycle, Inc._, No. 320CV00655RJCDCK, 2022 WL 987341 (W.D.N.C. Mar. 31, 2022). Nonetheless, certification of an FLSA collective and Rule 23 class require different standards of analysis. _See Williams v. G4S Secure Sols. (USA) Inc._, 2018 WL 565718, at *2 (M.D.N.C. Jan. 24, 2018). While the FLSA collective may be conditionally certified upon a lenient standard in the first stage, a Rule 23 class is still subject to much more rigorous standards before a court will certify. _See_ Fed. R. Civ. P. 23(a).

12

In the *China Agritech* matters, the first and second actions pursuant only to Rule 23 and the PSLRA were both *denied* class certification. *China Agritech*, 584 U.S. at 737. The first action received the district court's final determination within fifteen (15) months of filing the complaint, leaving ample time for a successive class action to be timely filed if appropriate. *Id*. Indeed, a successive class action *was* timely filed within a few months of the court's denial of certification in the first action. *Id*. The second action, too, was denied class certification, albeit for different reasons, and thereafter resolved out of court. *Id*.

Here, the *Mebane* plaintiffs sought FLSA collective and Rule 23 class certification together in *one* motion following the close of Phase I discovery. *Mebane*, ECF No. 64. On November 5, 2020, over two (2) years after the initial filing of the complaint, the *Mebane* plaintiffs' Rule 23 class was certified, unlike in *China Agritech*, along with a grant of conditional certification for the FLSA collective. *Mebane*, ECF No. 82. Plaintiffs further managed to get an *additional* Rule 23 class certified the following year. *Mebane*, ECF No. 154. It was not until May 12, 2023, that the Court reversed course and decertified the FLSA collective and Rule 23 classes. *Mebane*, ECF No. 198. In other words, nearly five (5) years passed between the filing of the initial complaint *and* the Court's decertification order. Plaintiffs had no opportunity at all to file a successive or amended class claim within the appropriate statute of limitations by the time the putative classes were effectively decertified.

3. *Unlike the Plaintiff in China Agritech, Plaintiffs Here Continuously Litigated Their Class Claims from Decertification in Mebane through the Present Action.*

Finally, whereas the third action filed by the plaintiff, Resh, was effectively a completely new action disconnected from the previous two actions, the current case before the Court is a direct, immediate, and uninterrupted continuation of the prior *Mebane* action. In the third *China Agritech* action, Resh did not file a *third* class action until a year after the Smyth case was denied class certification and resolved out of court, and several months after the statute of limitations absent tolling had expired. *See China Agritech*, 584 U.S. at 737-38. Resh had not been involved in either of the previous actions in *any* capacity, much less as a purported lead plaintiff. *Id*. at 750. Resh was also not represented by the same counsel as had represented Dean and Smyth in the two prior actions. *Id*. at 738. Resh's action was therefore an entirely new action that simply attempted to take advantage of the diligence of the plaintiffs in *Dean* and *Smyth*.

Here, the present action represents a direct continuation from the still-ongoing *Mebane* case. When the Court decertified the FLSA collective and Rule 23 classes based on Defendant's representation that too many individualized inquiries prevented a common answer, Plaintiffs immediately sought to stay the litigation and appeal the ruling to the Fourth Circuit. *See Mebane*, ECF No. 202; *see also Mebane*, ECF No. 201. Upon the Fourth Circuit's decision *not* to hear the appeal right away, Plaintiffs immediately filed *three* separate class actions and moved for equitable tolling. *See, e.g.* Dkt. 1, Complaint; *see also Ayers* Dkt. 8, *Carson* Dkt. 5, *Ferges* Dkt. 6. The named plaintiffs of this action were directly involved as Opt-In Plaintiffs in *Mebane*. *See Mebane*, ECF Nos. 95-1, 95-2, 95-5. **The decision to file <u>three</u> class actions, one class for each plant, was made to serve Rule 23's purpose "to avoid, rather than encourage, unnecessary filing of repetitious**

14

*papers and motions*." *China Agritech*, 584 U.S. at 750. Furthermore, the plaintiffs in all three successive collective and class actions maintained uninterrupted representation by the same counsel as the plaintiffs in *Mebane*. In other words, the *three* class actions do *not* exist as new actions taking advantage of an earlier, otherwise unrelated plaintiff's diligence, but are in fact the *same* plaintiffs continually and exhaustively pursuing redress for Defendant's violations on behalf of themselves and the putative class.

C.   **The Supreme Court's Policy Rationale for Its Decision in *China Agritech* Would Be Undermined, Not Supported, By Applying Its Holding to the Present Case.**

The Supreme Court reasoned that its holding in *China Agritech* promoted efficiency and economy of litigation by not allowing indolent plaintiffs to "piggyback" on the diligence of otherwise unrelated plaintiffs in filing successive class actions. *Id.* at 740. The Supreme Court *correctly* recognized that a ruling to the contrary could result in a defendant constantly defending itself from apparently limitless successive class actions propelled only by a technicality of tolling and *not* by plaintiffs doggedly pursuing their own rights. *Id.* Furthermore, the Supreme Court recognized that Rule 23 and the PSLRA encouraged prompt resolution of class certification issues, a preference not served by allowing unrelated plaintiffs to sit on their class claims until after the statute of limitations had expired. *Id.*

However, a strict application of *China Agritech*'s ruling to the present, given the very different circumstances, would directly undermine the Supreme Court's policy rationale. First, defendants defending against hybrid FLSA collective and Rule 23 state law

15

class claims would have every incentive to prolong the litigation to attempt decertification efforts until after the statute of limitations expires, even after plaintiffs may have successfully established FLSA conditional and Rule 23 class certification of common claims and theories of relief and maintained the same for several years until an unexpected decertification ruling. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F.Supp.3d 1295 (N.D. Ga. 2014). Indeed, while *Crown, Cork & Seal Co.* addressed applying *American Pipe* tolling to plaintiffs' individual claims, the same could be applied to successive *class* claims: "Failure to extend the *American Pipe* rule "to class members filing separate actions," in addition to those who move to intervene, would result in "a needless multiplicity of actions" filed by class members preserving their individual claims— "precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *See China Agritech,* 584 U.S. at 739 (citing *Crown, Cork & Seal Co.*, 462 U.S., at 351). While the Supreme Court made clear that such *American Pipe* tolling should not apply to a plaintiff who "waits out the statute of limitations to piggyback on earlier, timely filed class action," *China Agritech*, 584 U.S. at 739, the facts in *China Agritech* could not be more starkly contrasted to the facts at hand, especially in light of the procedural requirements at issue with the PSLRA. Indeed, the only alternative to Plaintiffs' decision in *each* of the instant actions[2] to *promptly* file

---

[2] *Ayers et al. v. GKN Driveline N. Am., Inc.*, No. 1:23-cv-581 (M.D.N.C. July 14, 2023); *Ferges et al. v. GKN Driveline N. Am., Inc.*, No. 1:23-cv-585 (M.D.N.C. July 14, 2023); and *Carson et al v. GKN Driveline N. Am., Inc.*, No. 1:23-cv-583 (M.D.N.C. July 14, 2023).

16

successive collective/class actions would be instead to have filed *over* two hundred (200) individual actions before *this* Court alone. This cannot be what *China Agritech* intended.

In her concurring opinion in *China Agritech*, Justice Sotomayor wrote, "Despite the [Supreme] Court's misstep in adopting an unnecessarily broad rule, ***district courts can help mitigate the potential unfairness of denying American Pipe tolling to class claims not subject to the PSLRA***." *Id*. at 755. Considering the significant factual distinctions between the circumstances facing the Supreme Court in *China Agritech* and the circumstances facing the Court in the present matter, as well as the potentially overwhelming effect that filing hundreds of individual lawsuits would have on *this* Court, such effects would completely negate and eradicate the purpose behind the Federal Rule of Civil Procedure 23 mechanism, obliterating any notion of "efficiency and economy of litigation." *Id*. at 740. Thus, the Court should reject Defendant's argument that all putative class members' claims but those of the named plaintiffs are time-barred and instead grant equitable tolling for their claims dating to October 23, 2015, for Defendant's willful violations of the FLSA[3] and to October 23, 2016, for all other claims.

**D.** **Plaintiffs' Proposed Collective and Class Are Not Impermissible Fail-Safe Classes.**

In certifying and defining a Rule 23 class, concerns over the creation of a fail-safe class may arise when the proposed class definition "is defined so that whether a person

---

[3] Of course, going back to October 23, 2015 would only apply to those who may have filed consents to sue forms early enough and immediately after the filing of the original Mebane complaint. Indeed, it is quite possible that the only two individuals whose claims go back to 2015 are only limited to the Named Plaintiffs, James Mebane and Angela Worsham.

qualifies as a member depends on whether the person has a valid claim." *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)). "Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can *and* often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *See Messner*, 669 F.3d at 825.

Notably, the modified definition proposed by Plaintiffs, here, mirrors the language of the definition proposed by the plaintiffs in *Hamelin v. Faxton-St. Luke's Healthcare*, as cited by this Court, and eliminates the objectionable language highlighted by Defendant in its motion for reconsideration that could have required putative class members to establish they suffered the injury of unpaid "promised, earned, and accrued wages" for meal break work. *See* 274 F.R.D. 385, 389 (N.D.N.Y. 2011); *see also Mebane*, ECF No. 157, at 16 (challenging the inclusion of "individuals who were . . . not compensated all promised, earned, and accrued wages for hours worked during unpaid meals due to Defendant's automatic deduction policy" in the Automatic Deduction Class definition). In other words, by removing any suggestions that the unpaid wages were owed to class members from the class definition, the proposed definition avoids the fail-safe concerns cited by this Court and others. *See Mebane*, ECF No. 179, at 8-9; s*ee also Chado v. National Auto Inspections, LLC*, No. CV 17-2945, 2019 WL 1981042 (D. Md. May 3, 2019) (redefining class to avoid impermissible fail-safe class but furthering the ability to identify class members).

18

Specifically, the definition uses fact-based language devoid of legal conclusions, including no reference as to the appropriateness of the automatic meal break deduction or whether Defendant had a legal obligation to compensate for such time. Furthermore, the class can be defined and found simply by analyzing Defendant's payroll records of all individuals who can be identified before a decision on the merits, despite varying machine operator titles assigned. *See Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *5 (E.D.N.C. Aug. 27, 2020) (internal quotations and citations omitted). To the extent Defendant's payroll records may not accurately capture all putative class members and/or their resulting damages based on Plaintiffs' theory of the liability, Plaintiffs and class members may rely upon representative testimony and proof to establish the frequency of how often (and for how long) members of the Automatic Deduction Class worked through all or part of their meal break without compensation. *See generally Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449-50 (2016) (allowing representative proof that "included employee testimony" to establish liability in an FLSA action).

In the Memorandum and Order issued by District Court Judge, Lorretta C. Biggs, the Court noted its acceptance of both the Automatic and Rounding class definitions. *Mebane*, ECF No. 198.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Equitable Tolling for the Putative Class, tolling claims for the

putative class to October 23, 2015, for Defendant's willful violations of the FLSA and to October 23, 2016, for all other claims.

Respectfully submitted this October 21, 2024.

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59570)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(D)(1)</u>

I hereby certify that the foregoing complies with Local Rule 7.3(D)(1), as it contains

5,257 words, excluding parts of the memorandum that are exempted by LR 7.3(D)(1).

I certify that the foregoing is true and accurate.

Respectfully submitted this October 21, 2024.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR EQUITABLE TOLLING ON BEHALF OF THE PUTATIVE CLASS** was served in accordance with the Federal Rules of Civil Procedure on the following:

Paul DeCamp (Special Admission)
**EPSTEIN BECKER & GREEN, P.C.**
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
T: (202) 861-1819
F: (202) 296-2882
PDeCamp@ebglaw.com

Adriana S. Kosovych (Special Admission)
**EPSTEIN, BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
AKosovych@ebglaw.com

Kevin S. Joyner
Vanessa N. Garrido
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
8529 Six Forks Road, Suite 600
Raleigh, North Carolina 27615
Phone: 919-787-9700
Facsimile: 919-783-9412
Kevin.joyner@ogletree.com
Vanessa.garrido@ogletree.com
*Attorneys for Defendant*

/s/ *Gilda Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693

22

Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs*