IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES AYERS, et al., on behalf of themselves and all others similarly situated,<br>     Plaintiffs,<br>v.<br>GKN DRIVELINE NORTH AMERICA, INC.,<br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) | 1:23-CV-581 |
| JOHN CARSON, et al., on behalf of themselves and all others similarly situated,<br>     Plaintiffs,<br>v.<br>GKN DRIVELINE NORTH AMERICA, INC.,<br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) | 1:23-CV-583 |
| TAMIKA FERGES, et al., on behalf of themselves and all others similarly situated,<br>     Plaintiffs,<br>v.<br>GKN DRIVELINE NORTH AMERICA, INC.,<br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) | 1:23-CV-585 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Chief District Judge.

  The plaintiffs in these related actions are employees at plants operated by the defendant GKN Driveline North America in Mebane, Sanford, and Roxboro, North

Carolina. They allege that GKN's wage and hour policies violate the federal Fair Labor Standards Act and the North Carolina Wage and Hour Act. The plaintiffs now seek collective certification for their FLSA actions and Rule 23 class certification for their NCWHA actions. On behalf of putative collective and class members, the plaintiffs have also moved to toll the statutes of limitations applicable to the FLSA collective and NCWHA class claims.

The proposed pre-2020 subcollectives and subclasses are not suitable for collective and class resolution, and to that extent the motions for collective and class certification will be denied. The Court lacks sufficient information to reach a conclusion as to the post-2020 subcollective and subclass, so the remainder of those motions will be held open. The motions for equitable tolling of the statutes of limitations will be granted for putative post-2020 class and collective members, back to the date these three actions were filed, pending further order on collective and class certification. Otherwise, the motions for equitable tolling will be denied.

I.      **Background Facts**

In 2018, employees and former employees of GKN filed suit alleging wage and hour violations under the FLSA and North Carolina law and seeking certification of an FLSA collective and a Rule 23 class. *Mebane v. GKN*, 18-CV-892.[1] The Court conditionally certified a collective and a class to seek relief based on GKN's "policy of

---

[1] To date there are 274 docket entries in *Mebane*. The Court has made no effort to provide a detailed summary of those proceedings, summarizing them here and elsewhere in this order only to the extent relevant and necessary. Going forward, all citations to proceedings in that case, 18-CV-892, will be cited as "Mebane, Doc. #."

rounding time." *Mebane*, Doc. 82 at 24.[2]  A total of 384 employees opted-in to the FLSA action. *Mebane*, Doc. 271 at 2.  The Court later certified an additional Rule 23 class covering the plaintiffs' NCWHA "auto-deduction" claims. *Mebane*, Doc. 154 at 2, 14.

After more discovery, the Court decertified the classes and the collective. *Mebane*, Doc. 198.[3]  Some of the opt-in plaintiffs in *Mebane* then filed the three lawsuits now before the Court, one for each GKN plant in the Middle District. *Ayers*, 23-CV-581; *Carson*, 23-CV-583; *Ferges*, 23-CV-585.[4]  The complaints, as amended, include the same alleged violations as in *Mebane*, along with new violations based on changes GKN made to its timekeeping policies in 2020. Doc. 34 at ¶¶ 48, 50.[5]  In each lawsuit, they sought certification of an FLSA collective and a Rule 23 class for the same pre-2020 "rounding" and "auto-deduction" FLSA and NCWHA violations alleged in *Mebane* and of an FLSA collective and a Rule 23 class for alleged violations beginning in 2020 after GKN changed its policies. Doc. 71 at 6–7; Doc. 73 at 8.

---

[2] *Mebane* was handled by a different district judge, who has since moved to inactive senior status.

[3] Much later, the named plaintiffs in *Mebane* settled with GKN, and that settlement was approved. *Mebane*, Doc. 266.  Mr. Mebane has appealed the decertification order. *Mebane*, Doc. 272.

[4] These three cases were initially overseen by the same judge who handled *Mebane*, until that judge moved to inactive senior status.  The cases were reassigned to the undersigned judge on May 21, 2025.  After a status conference with counsel, *see* Minute Entry 06/23/2025, the Court held all matters open at the request of the parties pending settlement discussions and a mediation.  That proved unsuccessful, *see* Doc. 109, and the cases are now moving forward.

[5] For convenience and unless otherwise noted, all CM/ECF Document citations are only to *Ayers*, 23-CV-581.  Beyond the different plant locations, the pleadings and motions in all three cases do not meaningfully differ.

3

Specifically, the plaintiffs request certification for three subcollectives and three subclasses: (1) a Pre-2020 Time-Shaving Subcollective/class, (2) a Pre-2020 30-Minute Auto Deduction Subcollective/class, and (3) a Post-2020 Off-The-Clock Work Subcollective/class. Doc. 71 at 6–7; Doc. 73 at 8. The proposed subcollectives and subclasses mirror each other except for "look back" dates. *Compare* Doc. 71 at 6–7, *with* Doc. 73 at 8.

On July 14, 2023, the same day the complaints were filed, the plaintiffs moved for equitable tolling of all FLSA and NCWHA claims for the named plaintiffs and any opt-in plaintiffs.[6] Doc. 8. On February 20, 2024, after briefing, the Court, per Magistrate Judge Auld, granted the motion for equitable tolling as to the named plaintiffs but denied it without prejudice as to any putative collective and class members. Doc. 45.

The plaintiffs filed a new motion for equitable tolling on October 21, 2024. Doc. 85. In the motion, the plaintiffs request tolling for the "Opt-in Plaintiffs' and the putative class's [FLSA] claims from the date Plaintiffs filed their consent to join forms in the . . . *Mebane* matter," and the NCWHA claims "from October 23, 2018, the date the *Mebane* matter was filed." *Id.* at 2.

## II. The Role of Discretion in Class Actions and FLSA Collective Actions

Collective actions under 29 U.S.C. § 216(b) and class actions under Federal Rule of Civil Procedure 23 are similar in some ways but have distinct and meaningfully

---

[6] As of that date, no opt-in plaintiffs had filed consent forms in this case. Opt-in plaintiff consent forms were filed on various dates beginning on August 1, 2023, and ending on June 18, 2024. Docs. 13, 23 through 25, 27, 31 through 33, 43, 47, 61.

different requirements. *See generally Calderone v. Scott*, 838 F.3d 1101, 1103–04 (11th Cir. 2016) (comparing FLSA collectives with Rule 23 classes); *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 88–91 (1st Cir. 2022) (same); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (same). Both can, among other benefits, provide more efficient ways to resolve large numbers of common or overlapping claims. *See Calderone*, 838 F.3d at 1103.

But as the number of claimants multiplies, so too can the number of potential pitfalls. *See generally* Manual for Complex Litigation (Fourth) § 21 (2004). To head off foreseeable complications and ensure the "just, speedy, and inexpensive determination" of such cases, Fed. R. Civ. P. 1, district courts must exercise significant discretion in certifying both collectives and class actions. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989) (emphasizing the "wisdom and necessity for early judicial intervention in" managing FLSA collective actions); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) ("A district court has broad discretion in deciding whether to certify a class." (cleaned up)). As in any case, especially any complex case, courts have discretion in how to manage litigation. *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("Particularly in a complex case such as this, a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference."); *In re Strickland*, 87 F.4th 257, 261 (4th Cir. 2023); *In re Houston*, No. 25-1763, 2025 WL 2375358, at *1 (4th Cir. Aug. 15, 2025).

The exercise of discretion permits, or even demands, flexibility. As the Fourth Circuit has explained, "[t]he word 'discretion' recognizes that the exercise of authority is often impossible without some leeway for judgment." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008). In exercising their discretion, courts do not ignore the circumstances a particular case presents. Nor do courts decide such discretionary matters in a vacuum.

That discretion includes broad discretion in deciding whether to certify a class, so long as that discretion is exercised within the framework of Rule 23. *See, e.g., Mr. Dee's Inc. v. Inmar, Inc.,* 127 F.4th 925, 929 (4th Cir. 2025); *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions). This includes discretion in defining the scope of the class, *see Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 275 (E.D. Va. 2014) (so holding and collecting cases), and in making decisions about notifying class members. *See, e.g.*, Fed. R. Civ. P. 23(c)(2)(A) (noting that for classes certified under Rule 23(b)(1) or (b)(2), "the court may direct appropriate notice to the class").

Courts also have flexibility in deciding how to assess whether the "similarly situated" requirement in FLSA cases is satisfied, *Hipp*, 252 F.3d at 1219, and whether and when to send notices to potential FLSA plaintiffs. *Hoffmann–La Roche*, 493 U.S. at 169. While the two-step certification process commonly used by district courts in this circuit and others can be a helpful framework for managing collective actions, neither the text of

6

the FLSA nor binding precedent demand its application. *See id.* (noting that district courts have "discretion" to implement § 216(b) by facilitating the sending of notice); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (noting that "certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful case management tool." (cleaned up)).

### III. Claims For Unpaid Wages Before 2020.

#### A. The Pre-2020 FLSA Subcollectives

The Court finds that preliminary certification of these FLSA collectives is not appropriate. The "time-shaving" claims asserted here and the "rounding" claims asserted in *Mebane* are essentially the same. Both cover claims asserting employees were not paid for required work done before and after they "clocked in." *See* Doc. 86 at 19 (statement by plaintiffs that "the present action represents a direct continuation" of *Mebane*.).[7]

The Court already found that the "rounding" or "time-shaving" claims raised too many individual questions for a collective to work well. *Mebane*, Doc. 198. And it made the same findings in the class certification context for the "auto-deduction" claim. *Id.* There is no reason to think that will not be true again. Dividing the plaintiffs into three groups based on the plants where they worked removes only one of the many obstacles previously identified by the Court. The plaintiffs have made no real effort to address

---

[7] Insofar as any of the pre-2020 claims are not identical to those asserted in *Mebane*, they are time barred under both the FLSA's three-year statute of limitations for willful violations, 29 U.S.C. § 255(a), and the NCWHA's two-year statute of limitations, N.C. Gen. Stat. § 95-25.22(f), and certification would be pointless.

7

those problems. "[C]ollective treatment is imprudent" when it "is unlikely to promote orderly and sensible case management." *MacGregor v. Farmers Ins. Exch.*, No. 10-CV-3088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011).

Moreover, every employee received notice of the *Mebane* case and had an opportunity to opt in to the FLSA action. *Mebane*, Doc. 84-1. Those who did and who joined one of these three lawsuits have had the statute of limitations tolled for their FLSA time-shaving/rounding claims from when they opted in to *Mebane,* and they can pursue their claims here. Doc. 45 at 11. Those who did not opt in have long since had their claims, as to both "rounding" and "auto-deductions," barred by the statute of limitations. 29 U.S.C. §§ 255(a), 256; *Thomas v. Maximus, Inc.*, No. 21-CV-498, 2022 WL 1481853, at *2 (E.D. Va. May 10, 2022) (explaining that an FLSA opt-in plaintiff's action only commences and tolls the statute of limitations "when she files written consent to opt in."). The requested application of equitable tolling would give rise to many individual questions.[8]

The plaintiffs, who have the burden to show that a collective is appropriate, have not offered good reasons explaining why the same "rounding" collective that was decertified in *Mebane* would fare better the second time around. Nor have they credibly

---

[8] For reasons discussed *infra*, equitable estoppel as to all putative members is not appropriate. Otherwise, traditional equitable estoppel principles would apply. S*ee, e.g.*, *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283–84 (4th Cir. 2002) (declining to equitably toll the statute of limitations on an FLSA claim because the governmental plaintiff did not act diligently to protect its rights within the statute of limitations); *Cruz v. Maypa*, 773 F.3d 138, 146–47 (4th Cir. 2014) (explaining that a court should equitably toll the statute of limitations on FLSA claims when the plaintiff is prevented from filing a claim within the limitations period because of the defendants' wrongful conduct.).

8

explained why the same problems do not arise with the "auto-deduction" claim. Even if that were not so, any plaintiffs who now opt-in would either have their claims dismissed on statute of limitations grounds or force the court and the defendants to engage in individual equitable-estoppel fact-finding. The motion to certify these subcollectives will be denied.

### B. The Pre-2020 NCWHA Subclasses

This case was filed on July 14, 2023. Doc. 1. The statute of limitations for North Carolina wage and hour claims is two years. N.C. Gen. Stat. § 95-25.22(f). Nothing else appearing, claims for unpaid wages accruing before July 14, 2021, are barred by the statute of limitations.

But the filing of a class action complaint tolls the statute of limitations for the claims of putative class members. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983); *Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte*, 146 N.C. App. 33, 42–43, 552 S.E.2d 655, 661 (2001). Thus, the filing of the putative class action in *Mebane* tolled the statute of limitations for the claims asserted. That tolling ceased when the class was decertified on May 12, 2023. *Mebane*, Doc. 198; *see Crown, Cork, & Seal Co.*, 462 U.S. at 354; *Scarvey*, 146 N.C. App. at 43. The present plaintiffs immediately filed these lawsuits, asserting the same rounding Wage and Hour claims, *see supra* at 7, and seeking to certify a class to pursue the same pre-2020 claims asserted in *Mebane*. Doc. 86 at 19.

The United States Supreme Court has foreclosed a second "follow-on" class action under these circumstances, specifically holding that once a class action is decertified, an

9

untimely successive class action on the same claim cannot proceed. *China Agritech v. Resh*, 584 U.S. 732, 736, 740 (2018). To permit otherwise would "allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 743.

That is exactly what the plaintiffs seek to do here. As the plaintiffs themselves acknowledge, their wage and hour claims are "a direct, immediate, and uninterrupted continuation of the prior *Mebane* action." Doc. 86 at 19.

The plaintiffs attempt to distinguish *China Agritech*, contending that it only addressed cases involving claims under the Private Securities Litigation Reform Act. *Id.* at 18–20. That reading is undermined by the case's broad holding: "the Federal Rules do not offer a reason to permit plaintiffs to exhume failed class actions by filing new, untimely class claims." *China Agritech*, 584 U.S. at 748 (cleaned up).[9]

---

[9] Throughout the briefing on equitable tolling, the parties have assumed federal tolling law applies. The Court's decision in *China Agritech* was grounded in concerns over how Federal Rule of Civil Procedure 23 should be applied. *China Agritech*, 584 US at 748 (noting that "[w]hat the Rules [of Civil Procedure] do not offer is a reason to permit plaintiffs to exhume failed class actions by filing new, untimely class claims"). Viewed that way, it makes sense that federal law would apply to the successive-class-action issue. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010) (explaining that Rule 23 preempts directly conflicting state procedure). But viewed through a different lens, state law might apply; for state law claims brought in federal court, state law applies to whether the statute of limitations is equitably tolled. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 288–89 (4th Cir. 1999); *Thomas v. Bragg Cmtys., LLC*, No. 22-CV-226, 2023 WL 219337, at *2 (E.D.N.C. Jan. 17, 2023); 1 McLaughlin on Class Actions § 3:15 (21st ed.). If North Carolina tolling rules do apply, it seems likely that North Carolina courts would apply the holding of *China Agritech*. North Carolina courts apply the *American Pipe* rule, *Scarvey*, 146 N.C. App. at 42–43, and in other contexts have emphasized the same efficiency concerns the Supreme Court emphasized in *China Agritech*. *See, e.g.*, *Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 337, 757 S.E.2d 466, 470 (2014) (noting class actions are appropriate if they "serve useful purposes such as preventing a multiplicity of suits" but such usefulness must be balanced against "inefficiency or other drawbacks"). Neither party contends otherwise, so the Court will proceed accordingly.

10

Under *Crown, Cork & Seal Co.*, once the class in *Mebane* was decertified, the erstwhile Rule 23 class members were free to bring their claims on an individual basis, with the statute of limitations tolled from the filing of the class complaint in *Mebane*. 462 U.S. at 353–54. Some have done so here. But *China Agritech* prohibits a follow-on class action raising the same class claims already raised in *Mebane*. The motion to certify these subclasses will be denied.

### C. The Post-2020 "Off-the-Clock" Work Subcollective/class

It appears undisputed that at some point around 2020, GKN changed its time-keeping policies. GKN says it ceased the automatic meal deduction and rounding practice at issue in *Mebane* in January 2020, *see, e.g.*, Doc. 52 at 15 & n.1, and the Court understands the plaintiffs to challenge, on behalf of a class and collective, the current timekeeping practices associated with "clocking in." *See e.g.*, Doc. 34 at ¶¶ 62–67. The post-2020 claims were not at issue in *Mebane*. Doc. 115.

Unfortunately, the way the multitude of motions have been briefed in these cases makes it almost impossible to understand these claims and whether certification is appropriate. The plaintiffs' primary efforts have focused on the pre-2020 claims, and their discussion of the claims asserted by the proposed post-2020 class and collective has gotten short shrift. The defendants' motions to strike, discovery choices, and tactical decisions have added to the confusion.

The Court will hold open a decision about certification of this class and collective to allow the parties a limited period of time to complete discovery on these claims and on the claims of the individual plaintiffs and opt-in plaintiffs who have joined. At that point,

11

if the plaintiffs wish to pursue the "off-the-clock" claims on behalf of a post-2020 class or collective, they may file an amended motion, brief, and evidence, to which GKN may respond.[10]

In the meantime, the Court will schedule a status conference with counsel to discuss whether it might be appropriate to skip consideration of the preliminary FLSA certification step in view of the years of discovery that have led to this point and move straight to final certification. Nothing in the FLSA dictates that courts must use the typical two-step process, *Myers*, 624 F.3d at 555 n.10, and it seems like this might be a case where its use will simply delay things.

Within this framework, the Court expects these cases to move forward without delay. The attention of the parties is directed to the Court's Order at Doc. 95, particularly Paragraph 9.

IV. **Tolling of the Statutes of Limitations**

On behalf of absent and opt-in collective and class members, the plaintiffs have moved to equitably toll the statutes of limitations on their FLSA collective claims to the date they opted in to *Mebane* and on their NCWHA class claims to the date that *Mebane* was filed. Doc. 85 at 2.

A. **NCWHA Putative Class Members**

As already discussed, the filing of *Mebane* as a putative class action tolled the statute of limitations for the asserted pre-2020 NCWHA claims until decertification, but

---

[10] If no such amended motion is filed, the currently pending motion will be denied. The plaintiffs have the burden to show class certification and FLSA collectives are appropriate.

12

*China Agritech* does not allow a follow-on class action for those claims under these circumstances. *Supra* at 9–11 & note 9. The named plaintiffs can proceed with their personal pre-2020 NCWHA claims, as the Court has previously recognized. Doc. 45. But since the Court is not going to certify that class, the named plaintiffs do not represent former *Mebane* class members and cannot act as their agents to seek tolling on their behalf. *See Gentry v. Siegel*, 668 F.3d 83, 90 (4th Cir. 2012) (explaining that a putative class representative is an agent for the class "only if the class is certified." (cleaned up)). To the extent the plaintiffs seek such tolling on behalf of persons who are not parties to this action, the motion is denied without prejudice to such persons seeking tolling in their own lawsuits, should they file them.

As to the post-2020 "off-the-clock" claims, claims that are proffered on behalf of a putative class and that were not asserted in *Mebane*, the statute of limitations is tolled pursuant to the *American Pipe* and *Scarvey*, as of the date of filing these lawsuits: July 14, 2023.

### B. FLSA Putative Collective Members

The plaintiffs' motions for equitable tolling of FLSA claims going back to events in *Mebane* will be denied. As previously noted, the statute of limitations on FLSA claims is not automatically tolled by the filing of a putative FLSA collective. *See supra* at 8. Absent equitable tolling, an employee's FLSA claim commences and tolls the statute of limitations only when the employee files written consent to opt-in. 29 U.S.C. § 256; *see also, e.g.*, *Maximus*, 2022 WL 1481853, at *2; *Tripp v. Perdue Foods LLC*, No. 24-CV-987, 2025 WL 1785912, at *2 (D. Md. June 27, 2025). Notice was sent to employees in

13

*Mebane* that they could opt-in, and for those who did not and who have not chosen to become plaintiffs in this case, tolling the statute of limitations would be inequitable and prejudicial to the defendant. The plaintiff has not shown any of the narrow situations that justify equitable tolling, *see generally Chao*, 291 F.3d at 283 (summarizing equitable tolling grounds), and a collective-wide tolling rule would render the statutory language about the statute of limitations meaningless. *See, e.g.*, *Huang v. Shanghai City Corp.*, No. 19-CV-7702, 2020 WL 5849099, at *14 (S.D.N.Y. Oct. 1, 2020).

The Court will, however, toll the statute of limitations on the new post-2020 "off-the-clock" FLSA claims as of the date of the filing of these three lawsuits: July 14, 2023. "Equitable tolling is appropriate when extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Chao*, 291 F.3d at 283 (cleaned up). "In FLSA collective actions, the delay caused by the time the court takes to decide a motion, such as a conditional certification motion may be deemed an extraordinary circumstance justifying" equitable tolling. *Delcid v. Isabella*, No. 20-3167, 2022 WL 17342048, at *2 (D. Md. Nov. 30, 2022) (Mag. J., memorandum opinion and order) (cleaned up). "Recognizing the FLSA's broad remedial purpose and because equitable tolling issues often arise as to individual opt-in plaintiffs, courts regularly permit notice to be fixed to the three-year period prior to the filing of the complaint." *Singleton v. Am. Merch. Specialists, Inc.*, No. 22-CV-123, 2023 WL 5923780, at *1 (W.D.N.C. Aug. 15, 2023).

Here, there were extraordinary circumstances. The lawsuit was filed well over two years ago, and the case got derailed due to discovery disputes in which GKN

14

ultimately did not prevail.  *See* Doc. 104.  The move to inactive status by the original judge and the parties' request for time to discuss settlement have also contributed to a delay in notice.  Pending a decision on certification as to the proposed post-2020 FLSA collective, the statute of limitations for the plaintiffs' post-2020 FLSA collective claims will, in the Court's discretion, be equitably tolled from July 14, 2023, pending further order.

In the Court's discretion, it is **ORDERED** that:

1. In *Ayers v. GKN*, 23-CV-581,

    a. The plaintiffs' Motion for Conditional Collective Certification, Doc. 70, and Motion for Class Certification, Doc. 72, are **DENIED** as to the pre-2020 proposed subcollectives and subclasses.  A decision on the plaintiffs' motions to certify a class and conditionally certify a collective as to post-2020 claims, Docs. 70, 72, is **HELD IN ABEYANCE**.

    b. The plaintiffs' motion for equitable tolling of NCWHA claims on behalf of the putative class, Doc. 85, is **DENIED** to the extent it seeks tolling on behalf of the class back to events related to *Mebane v. GKN*, 18-CV-892, **and GRANTED** to the extent that the statute of limitations for the putative collective members' post-2020 FLSA collective claims is equitably tolled from July 14, 2023, pending further order.

2. In *Carson v. GKN*, 23-CV-583,

    a. The plaintiffs' Motion for Conditional Collective Certification, Doc. 65, and Motion for Class Certification, Doc. 67, are **DENIED** as to the pre-

15

2020 proposed subcollectives and subclasses. A decision on the plaintiffs' motions to certify a class and conditionally certify a collective as to post-2020 claims, Docs. 65, 67, is **HELD IN ABEYANCE**.

    b. The plaintiffs' motion for equitable tolling of NCWHA claims on behalf of the putative class, Doc. 80, is **DENIED** to the extent it seeks tolling on behalf of the class back to events related to *Mebane v. GKN*, 18-CV-892, **and GRANTED** to the extent that the statute of limitations for the putative collective members' post-2020 FLSA collective claims is equitably tolled from July 14, 2023, pending further order.

3. In *Ferges v. GKN*, 23-CV-585,

    a. The plaintiffs' Motion for Conditional Collective Certification, Doc. 69, and Motion for Class Certification, Doc. 71, are **DENIED** as to the pre-2020 proposed subcollectives and subclasses. A decision on the plaintiffs' motions to certify a class and conditionally certify a collective as to post-2020 claims, Docs. 69, 71, is **HELD IN ABEYANCE**.

    b. The plaintiffs' motion for equitable tolling of NCWHA claims on behalf of the putative class, Doc. 84, is **DENIED** to the extent it seeks tolling on behalf of the class back to events related to *Mebane v. GKN*, 18-CV-892, **and GRANTED** to the extent that the statute of limitations for the putative collective members' post-2020 FLSA collective claims is equitably tolled from July 14, 2023, pending further order.

4. The parties **SHALL** complete all discovery needed to address class and collective certification on the remaining claims and all fact discovery by December 20, 2025. If the plaintiffs wish to pursue the "off-the-clock" claims on behalf of a post-2020 class or collective, they may file an amended motion, brief, and evidence, no later than January 12, 2026, to which GKN may respond no later than February 2, 2026. The plaintiffs may file a reply brief no later than March 13, 2026.

5. The Court will schedule a conference with counsel to address other scheduling and logistical matters, as time permits.

This the 23rd day of October, 2025.

　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　UNITED STATES DISTRICT JUDGE