IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES AYERS, et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23-CV-581 |
| | ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) | |

---------------

| | | |
|---|---|---|
| JOHN CARSON, et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23-CV-583 |
| | ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) | |

---------------

| | | |
|---|---|---|
| TAMEKA FERGES, et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:23-CV-585 |
| | ) | |
| GKN DRIVELINE NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Catherine C. Eagles, Chief District Judge.

In these three related wage and hour cases, the Court previously denied class and collective certification. Only the claims of the 11 named plaintiffs remain for trial. The

parties disagree about the best course for trying those claims. The plaintiffs propose consolidation of the pre-2020 claims for a single trial, or, as a late breaking alternative, one trial for each set of plaintiffs in each of the three cases, whereas the defendant proposes dismissing all but the first named plaintiff in each case as misjoined or, alternatively, severing the individual cases for 11 separate trials.

Because the claims of the plaintiffs in each case are logically related and share at least some common questions of law and fact, the defendant's motion to dismiss will be denied. But the overlap between the plaintiffs' cases is far from comprehensive, and the circumstances of each plaintiff's employment with GKN appear different enough that common proof will not establish each element of their claims. To strike an appropriate balance between efficiency and fairness, and taking into account, *inter alia*, the way the parties have conducted this litigation to date and their plans for the trials, the Court will initially set two joint trials: one for the claims of James Ayers and Doyle Cawthon Jr. and the other for the claims of John Carson and Randall Stark. The Court will defer decision on the timing and consolidation of the remaining claims for trials.

## I.    Background

These cases arise out of GKN's wage and hour practices at its three plants in the Middle District.[1] The plaintiffs' allegations involve both GKN's pre-2020 policies and its post-2020 policies, with distinct claims corresponding to those timeframes. To avoid jury confusion and maintain a level of coherence in the proceedings, the Court has already

---

[1] A detailed factual and procedural background is provided in the Court's previous orders. *See Ayers*, Docs. 116, 152.

2

decided to try to the pre-2020 claims separately, with the post-2020 claims to be tried thereafter.  *See Ayers*, Doc. 149 at p. 2 ¶ 6.

In their pre-2020 claims, the plaintiffs contend that they were underpaid in violation of state and federal wage-and-hour law in three discrete ways:

(1) GKN required employees to arrive early to perform pre-shift work but adjusted their time according to a 7-minute (before February 2019) or 3-minute (February 2019 to January 2020) rounding policy, and those rounding policies resulted in a net undercounting of employees' hours worked.  *Ayers*, Doc. 150 at ¶¶ 49, 51–57; Doc. 167 at 6; Doc. 175 at 6–7.

(2) GKN required employees to stay late to perform post-shift work but adjusted their time according to a 7-minute (before February 2019) or 3-minute (February 2019 to January 2020) rounding policy, and those rounding policies resulted in a net undercounting of employees' hours worked.  *Ayers*, Doc. 150 at ¶¶ 61–62, 66–67; Doc. 167 at 6; Doc. 175 at 6–7.

(3) GKN automatically deducted 30 minutes from employees' time each shift, regardless of whether the employee actually received a 30-minute meal break and despite frequently requiring employees to work through their meal breaks.  *Ayers*, Doc. 150 at ¶¶ 58–60; Doc. 167 at 6; Doc. 175 at 6–7.

The plaintiffs allege that GKN, through these express and de facto policies, paid employees less than time-and-a-half for time worked in excess of 40 hours per week, in violation of the Fair Labor Standards Act, and failed to pay employees their promised

wage for all hours worked, in violation of the North Carolina Wage and Hour Act.  *Ayers*,
Doc. 150 at ¶¶ 86–115.

GKN acknowledges that its rounding and auto-deduction policies were uniform
across the three plants at issue in these cases.  *Ayers*, Doc. 161 at 8–9; *Carson*, Doc. 154
at 9; *Ferges*, Doc. 159 at 9.  It denies that its practices resulted in underpaying the
plaintiffs for work performed.

The Court has given the parties significant time to develop plans for an organized
way to try these cases and claims.  *See, e.g.*, *Ayers*, Doc. 149 at 2–3; Doc. 159 at p. 4 ¶ 7.
Instead, the plaintiffs move to consolidate these three cases and resolve the pre-2020
claims of all 11 plaintiffs in a single trial.  *Ayers*, Doc. 166; *Carson*, Doc. 159; *Ferges*,
Doc. 164.  And GKN moves to dismiss all but the first named plaintiff in each case as
misjoined or otherwise to sever each plaintiff's claims for separate trial.  *Ayers*, Doc. 160;
*Carson*, Doc. 153; *Ferges*, Doc. 158.

## II.    GKN's Motions

GKN contends that the claims of the plaintiffs in each case do not meet the
requirements for joinder under Rule 20 and that even if they do, each individual
plaintiff's case should be severed for separate trials under Rule 21.[2]  *See* Fed. R. Civ. P.
21 (providing that "the court may at any time . . . drop a party" to remedy misjoinder).

The contention that the plaintiffs are misjoined is without merit.  Rule 20(a)(1)
allows permissive joinder of plaintiffs when "(A) they assert any right to relief jointly,

---

[2] GKN does not request separate trials under Rule 42(b) and in fact asks the Court not to go
down that route.  *Ayers*, Doc. 161 at 24 n.8.

4

severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." In other words, "Rule 20 permits joinder of all reasonably related claims for relief by or against different parties." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (cleaned up). "For this reason, two claims arise from the same transaction—and therefore can be joined in the same action—when there is a 'logical relationship' between them." *Id.*

Here, the plaintiffs' pre-2020 rounding claims are based on the same policies implemented by the same employer over the same period of time. The plaintiffs plan to prove these claims largely by testimony from one expert. As noted *infra*, there will be individual issues to some extent, but that does not mean the claims have been misjoined. *Contrast* Fed. R. Civ. P. 20(a), *with* Fed. R. Civ. P. 23(b)(3); *see, e.g.*, *Crawford v. Newport News Indus. Corp*, No. 14-CV-130, 2019 WL 13443261, at *3 (E.D. Va. Sep. 12, 2019); *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 332 (D. Conn. 2016). The plaintiffs have satisfied the requirements of Rule 20(a)(1), and in its discretion the Court determines that the plaintiffs in each of these three cases were properly joined and severance is not necessary. *See Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) ("Rule 20 gives courts wide discretion concerning the permissive joinder of parties.").

As discussed *infra*, GKN's assertion of the need for 11 separate trials is also unfounded. Its position appears to be that, because it intends to raise individualized defenses to each plaintiff's claims, joint trials would do little to further judicial economy.

5

Even if GKN presents entirely individual evidence, the plaintiffs intend to present at least some common evidence, and there are many common questions of law; thus, limited consolidation will still promote efficiency and economy. Indeed, it is routine for common and individual questions to coexist within a joint trial. *See* Fed. R. Civ. P. 20(a)(1)(B) (requiring only that "*any* question of law or fact" be common to the plaintiffs (emphasis added)). Eleven separate trials lasting close to a week each would be a waste of judicial resources, result in duplicative effort, and impose undue expense on the litigants.

GKN's focus on the Court's class certification decision is misplaced. As the plaintiffs correctly point out, Rule 20 sets a different and lower bar than Rule 23. *See Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 542 (S.D. Ala. 2007); *contrast* Fed. R. Civ. P. 20(a)(1), *with* Fed. R. Civ. P. 23(a), (b)(3). The plaintiffs have cleared that lower bar.

GKN's motions to dismiss or to sever the cases into 11 trials will be denied. For reasons discussed *infra*, some severance is appropriate.

### III.     Plaintiffs' Motions to Consolidate

Rule 42(a) permits consolidation for trial if cases "involve a common question of law or fact." Unlike permissive joinder under Rule 20(a), there is no requirement under Rule 42(a) that claims consolidated for trial must arise out of the same transaction or occurrence. *Compare* Fed. R. Civ. P. 20(a)(1), *with* Fed. R. Civ. P. 42(a); *see generally* 9A Wright & Miller's Federal Practice & Procedure § 2382 (3d ed. 2026).

The issues of knowledge and willfulness will raise common questions of fact. For plaintiffs to recover for unpaid overtime under the FLSA, they must show that their

6

employer had actual or constructive knowledge of their overtime work. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986); *see* 29 C.F.R. §§ 785.11, 785.13.[3] And to prove willfulness, plaintiffs must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).[4] The plaintiffs propose to demonstrate GKN's knowledge through testimony about GKN's written policies, the testimony of GKN managers, and statistical evidence; that testimony, as the Court understands it, will largely be directed to GKN's knowledge that employees routinely worked for more hours than they were paid, not to whether GKN knew that Plaintiff A was not paid for 10 minutes of work on Tuesday. *See generally* 29 C.F.R. § 785.13. The plaintiffs do propose for each plaintiff to testify about their individual pre-shift, post-shift, and meal break work activities. *Ayers*, Doc. 167 at 9.

Whether the plaintiffs' evidence is sufficient to meet their burden to prove knowledge and willfulness will be common questions of law. And the admissibility of the parties' proffered expert testimony will also present common questions of law, since both experts appear to have applied their differing damages calculation methodologies

---

[3] The parties have not pointed to, nor is the Court aware of, any explicit statutory, regulatory, or caselaw requirement that an employer must have knowledge of an employee's work for time to be compensable under the NCWHA. But since the NCWHA and FLSA use the same definition for employ, "suffer or permit to work," N.C. Gen. Stat. § 95-25.2(3); 29 U.S.C. § 203(g), the Court will assume that the knowledge requirement applies equally to the plaintiffs' NCWHA claims. *See* 13 N.C. Admin. Code § 12.0103.

[4] The statute of limitations for willful violations of the FLSA is three years, otherwise it is two years. 29 U.S.C. § 255(a). This issue is not relevant to the plaintiffs' NCWHA claims, for which the statute of limitations is always two years. N.C. Gen. Stat. § 95-25.22(f).

7

uniformly across all plaintiffs. It is otherwise apparent that there will be a number of common questions of law related to the rounding claims.

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018); *see generally United States v. Janati*, 374 F.3d 263, 273–74 (4th Cir. 2004) (noting that "the scope of the district court's discretion to manage trials before it is and must be particularly broad," and identifying some of the many ways this plays out in civil and criminal cases). In exercising that discretion, district courts must weigh "the specific risks of prejudice and possible confusion" against "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982).

Here, those factors cut both ways. As noted *supra*, there are some real common questions of law and fact, particularly on the rounding claim, that could be efficiently answered in a single proceeding; this would save time and expense and reduce the burden on the parties, witnesses, and the Court. But there is an unacceptable risk of confusion and prejudice to both parties in a single trial involving how often and how much 11 different employees worked during their lunch breaks, when they have different job assignments in different plants and different supervisors.[5]

---

[5] The plaintiffs seem to think that just because the factfinder will have to answer the same question for each plaintiff that the question is "common." *See Ayers*, Doc. 167 at 7–9 (the

8

GKN's proposal for a five-day "bellwether" trial involving only one plaintiff has some superficial appeal. But GKN continues to assert that each individual trial would take four to five days, doing away with many of the efficiencies that might result from trying one case first and imposing an unjustified burden on the witnesses who would have to testify at all 11 trials. Given the history of this matter, there is no realistic reason to think that a bellwether trial will aid settlement.

The plaintiffs' alternative suggestion, made for the first time at a hearing on July 20, 2026, to have three trials, one in each case covering the claims of all the plaintiffs in that case, also has some superficial appeal. But it would not sufficiently mitigate the possibility of confusion, particularly since, in each case, some of the plaintiffs have post-2020 claims while others do not.

Juries are capable of resolving complex cases, but they rely on the parties to present their evidence in a clear and cogent manner rather than getting bogged down in minimally relevant minutiae, disorganization, and fights over every little thing. Perhaps there is an effective way that all of these cases could be tried jointly, but the plaintiffs' proposed trial plan, *Ayers* Doc. 167-1, and the defendant's scorched-earth tactics and proffered trial strategy suggest that the parties intend to take the latter approach.

---

plaintiffs' list of "common questions"). But that is not so; if the evidence is completely different for each plaintiff, there is no common question presented. *See Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 182–83 (4th Cir. 2026). Moreover, the plaintiffs consistently lump the rounding and automatic deduction claims together, *see, e.g., Ayers*, Doc. 167 at 7–9, while never explaining how they will prove the automatic deduction claim with anything other than individual testimony. In addition, some of the estimates that the plaintiffs provide in their proposed trial plan are unrealistic. There is no way that the testimony of the plaintiffs' expert will take only two hours, as they project. *Ayers* Doc. 167-1. Unrealistic estimates are unhelpful and make it difficult to believe that the plaintiffs have done realistic trial planning.

9

The parties are entitled to present their cases as they see fit. They are not entitled to make the Court their accomplice in creating confusion or wasting the time of jurors and witnesses. As neither party has provided a workable and efficient plan, the Court will do the best it can.

To minimize the potential for confusion and prejudice without completely abandoning efficiency, the claims of Mr. Ayers and Mr. Cawthon in the *Ayers* case will be consolidated and tried first. They both have only pre-2020 claims, are both maintenance technicians, and both worked at the Alamance plant. That trial will be followed immediately by a consolidated trial of the claims of Mr. Carson and Mr. Stark[6] in the *Carson* case, who likewise have only pre-2020 claims and worked at the Sanford plant.[7] By separate orders, the Court will impose time limits for these trials to assist the parties in developing some modicum of focus and efficiency and to encourage the parties to move from litigation mode to trial mode. *See, e.g.*, *Janati*, 374 F.3d at 274 (noting trial court's discretion to fix the length of a jury trial).

---

[6] The parties have represented that Mr. Stark is currently incarcerated. *Carson*, Doc. 154 at 14; Doc. 158 at 10 n.4. The logistical issues presented by his incarceration are neither insurmountable nor unfamiliar to the Court. Writs are available if a litigant so requests. The parties should be able to resolve any logistical issues in the ordinary course of final pretrial preparations.

[7] The Court has considered also trying the claims of Mr. Paylor, a plaintiff in the *Ferges* case, at this time. He is the only other plaintiff with only pre-2020 claims. Because the Court is concerned that the parties will not be efficient with their time, the Court will not order consolidation of Mr. Paylor's pre-2020 claims. If the parties agree to try Mr. Paylor's claims with those of Mr. Carson and Mr. Stark within the same general time frame, they can advise the case manager.

10

After those trials, the Court will be in a better position to evaluate further consolidation.  It may be appropriate for some or all of the remaining plaintiffs to try their pre-2020 and post-2020 claims at the same time.  Resolution of the partial summary judgment motions may also aid in these scheduling decisions.

Ordinarily lawyers and their clients are the best judges of how to try their cases at reasonable expense and are able to reach reasonable agreements to facilitate efficient trials with clear presentation of evidence.  As the history of these cases show, the Court has repeatedly offered the parties time to produce reasonable plans for efficient resolution of the remaining claims.  In this case, the parties have turned these opportunities into meaningless exercises, resulting only in delay and more disagreements.  The Court will manage the case differently going forward.  That said, the Court encourages the parties to continue to talk to each other about a sensible approach to the remaining trials and if there is agreement, the Court is open to hearing about it.  Otherwise, the Court will ask if and when it wants the opinions of the parties and their counsel.

In its discretion, the Court determines that limited consolidation is appropriate. The plaintiffs' motions for consolidation will be granted in part.

## IV.   Conclusion

The pre-2020 claims of the 11 remaining plaintiffs are logically related and involve at least some common questions of law and fact, so they are properly joined in each of these cases.  And resolution of those common questions would promote judicial economy without unduly prejudicing GKN's ability to put on individualized defenses or confusing the jury, so some degree of consolidation for trial is appropriate.  But the

11

plaintiffs have not demonstrated that they will be able to try these cases in a way that would allow a single jury to resolve all of the pre-2020 claims without undue confusion. Even consolidation of the claims of the plaintiffs into three trials is likely to cause trial management problems.

GKN's motions to sever and for separate trials will be denied. The plaintiffs' motions for consolidation will be granted in part, to the extent that the pre-2020 claims of Mr. Ayers and Mr. Cawthon will be set for consolidated trial, the pre-2020 claims of Mr. Carson and Mr. Stark will be set for separate consolidated trial, and further consolidation of the remaining claims will be a likely possibility.

It is **ORDERED** that:

1. The defendant's motions to dismiss and alternatively to sever for separate trials, *Ayers,* Doc. 160; *Carson*, Doc. 153; and *Ferges*, Doc. 158, are **DENIED**;

2. The plaintiffs' motions to consolidate, *Ayers,* Doc. 166 and *Carson*, Doc. 159, are **GRANTED in part** as follows:

   a. In *Ayers*, the claims of plaintiffs Ayers and Cawthon will be consolidated for trial, to begin September 15, 2026.

   b. In *Carson,* the claims of plaintiffs Carson and Stark will be consolidated for trial, to begin immediately upon the conclusion of the trial in *Ayers*, on or about September 17, 2026.

   c. The Court will set detailed trial preparation schedules by separate order as time permits, consistent with and supplementing the schedule and deadlines set in open court at a hearing on July 20, 2026.

12

3.  The plaintiffs' motion to consolidate, *Ayers*, Doc. 166, and *Carson*, Doc. 159, are otherwise **DENIED in part** and the plaintiffs' motion to consolidate, *Ferges*, Doc. 164, is **DENIED**, all **without prejudice** to consolidation after the first two trials are completed.

This the 23rd day of July, 2026.

UNITED STATES DISTRICT JUDGE

13